Good morning. I'm Steve Olson, Counsel for the Appellants to the Crulls. May it please the Court. In this proceeding at trial in the Bankruptcy Court, the bankruptcy judge found the existence of a partnership and found a failure to account for partnership funds and the Crulls prevailed. The bankruptcy appellate panel disagreed with that finding and that's why we're here today. There was... Your client started out as creditors, right? My client has been a creditor in part for the entirety. There was a $100,000 investment. Half was an equity participation and half was a straight loan. There's one document that was introduced at trial that talked about the profit investor interest in future tense, a document that was entitled loan agreement. But that was only one of many pieces of evidence that were introduced at the trial. Significantly, there was testimony from the plaintiff and from the defendant, both of whom acknowledged that as to half of my client's investment, there was a... It was an equity investment with a right to profit. The private offering memorandum that was provided to my clients at the time they made their investment referred to the ownership interest in the present tense. And that can be found at page 106 of the excerpts of record where it says the investors are members of the limited liability company and have pro rata ownership. Hold on a second. Let me get that. 106? 106. Okay. This is the page that starts at the top that says CW Development Partners? Yes. Okay. So where on this page are we looking? In the second paragraph, the second sentence. Okay. Investors are members of the limited liability company and have pro rata ownership interests based on their It's the private offering that was provided to my clients. If you'll go to page 101, that's the cover email. This was submitted to my clients, soliciting my clients. Attached as a cover letter, loan agreement, slash note, and the private offering. Right. And that in and of itself means what according to your view? There's a present ownership interest. The most important evidence at trial was the testimony of Mr. Kroll that I asked a half of my money, I had an equity interest as entitled to profit, and Mr. Utnehmer's testimony at trial where he acknowledged that the Krolls had a profit interest. The defense at trial wasn't that there's no entitlement to profit. The defense at trial was there wasn't any profit. There was an accounting provided that the Bankruptcy Court correctly found was inadequate. The other very important- Now, counsel, while you're talking about the agreement, I'm looking at page 103. And section 5 says the parties agree that $50,000 of this $100,000 loan is intended to be superseded by execution of a formal operating agreement which will recharacterize the lender's interest to an investor's equity interest. In other words, something that would happen in the future. So this initial contribution had to be a loan, not an investment. If the only evidence at trial were this one page, I would agree. But that wasn't the only evidence. What happened is that shortly after the $100,000 was provided, the managers, Mr. Utnehmer and Mr. Kwan, decided not to go Mr. Kroll considered himself to be a partner, and that was the testimony at the trial. Is there any written documentation to support that? Or is this oral evidence? Oral evidence, plus the private offering memorandum that refers to the ownership being in present tense. Well, also there is, if you go to the next page, 104, this is after the page that Judge Scanlon was reading from, there's a note. And the note is for $100,000. Right. The note is sort of inconsistent with an equity interest, right? And the last important thing that happened at the trial- Well, no, wait, wait, wait. Before you- What did you say about- You said if the pages that Judge Scanlon pointed to were the only piece of evidence, then it would come out one way, but there's other pieces of evidence. I was just pointing out there's one more piece of evidence that cuts the same way, right? The note. This was an unsigned note that was submitted with the email soliciting the investment from my client. Was it ever signed? I don't know that this note was ever signed. There were settlement discussions in 2008 that are not included in the excerpts of the record. Was any note signed? I think in 2008, in the context of settlement discussions, there was a note for $50,000, but that is not included in- It was in the record in the bankruptcy court, but it's not included in the excerpts. The other important thing that happened at the trial was in the closing argument, the bankruptcy judge grappled with, is this a situation- Is this a debtor-creditor situation or is this a partnership situation? And if you'll look, the transcript from the trial starts at, starting at 91, the judge grapples with that in dialogue with the Kroll's counsel. And then the defendant's counsel, in his closing argument, conceded that the Krolls were investors. So at trial, the existence of partnership, the existence of a fiduciary capacity was conceded. And where do you have that? That's at page 93. Again, in order to have context, I think you have to start at page 91. All right, what line of page 91 are we looking at? Well, on page 91, on line 13, the court asked the Kroll's counsel, your client considered himself as an investor partner. Do you think that was accurate? And the Kroll's counsel said, I do. And then at the bottom of that page, the court stated, starting in line 24, but one of the problems I'm having is that your client seems to go back and forth between being an investor and being a lender. And in response, I, counsel for the Krolls pointed out that 50,000 was a loan, 50,000 is equity. Now, where is that? That's at page 92, line 11 and 12. And then on page 93. But isn't this all self-serving? You're speaking for your own client there. Right. And we're getting, that's the context. Now, if you look at page 93, I sat down and counsel for the Utnemers stood up and acknowledged at lines 19 and 20, the Krolls were kind of investors in this property. There was never a dispute as to the equity investment as to half of my client's money. Okay. The, and to summarize. You have 30 seconds. You want to say something about that? The court's memorandum of decision was very terse regarding the basis for the partnership finding. But the record contained sufficient evidence for the finding, primarily the admissions of the defendant. No, but the bankruptcy court reversed all of this. The bankruptcy appellate panel. I'm sorry, the bankruptcy appellate panel reversed the bankruptcy court. Right. And all of these portions of the record would be affected by the reversal by the panel, would it not? I think there's de novo review of the decision of the bankruptcy appellate panel. And, all right. And the bankruptcy judge's finding of partnership is reviewed for clear error. Okay, thank you. Very well. We'll hear from the other side. Good morning, your honors. I'm William Bootenamer, representing myself, Pro Se. I'll get into two things. One, the testimony did not reflect that I thought there was any partnership. And two, there was no concession that investors, the Krolls were investors. I'd like to address two key issues. Page 32 of the excerpts, your lawyer, Mr. Welch was your lawyer? Yes, he is. He was. Okay, well, he seems to say. And, yes, the Krolls were a kind of investor. A kind of investor, correct. Well. Just like an investor in a loan is a kind of investor. And that was what he meant by that, is what my interpretation is. And I will get into a great deal of testimony. Well, but you have to read the next sentence, too. They were expecting to get a 50% interest. Right, expecting, future tense again. The issue of this case is basically that they were a lender with a contingent interest to convert into an investor. That did not happen. Well, the trial court seems to have thought differently. And why aren't we required to defer to the trial court's findings? I mean, these are ambiguous statements, as you point out. But we had a trial judge. You had a trial. Your testimony. And that's what the trial judge concluded, found. Yep, you're right. But the bankruptcy panel reviewed everything de novo, reviewed all the testimony, and made their own conclusion. Doesn't matter. Bankruptcy panel just drops out at this point. We do our own review. And this is just as if we were reviewing a district court. Correct. And so we have a trial court faced with an ambiguous situation, with evidence that looks to me like it can arguably support either position. The trial judge comes out in favor of your opponents. Why don't we say, well, okay, that's it. On appeal, we have no authority to reverse that. The answer is there's substantially more testimony than that. We don't weigh. We don't weigh. We don't weigh. The question is, is there enough evidence to support what the trial judge did? So the fact there's a lot more evidence on the other side doesn't count for anything. You know that. So why don't you speak to me in terms that would support the ruling in your favor, which is there's no evidence supporting the bankruptcy court's ruling. Okay. If that's what it is, then we'd have to reverse. I mean, the district court makes a clearly erroneous finding. There's no support for it. Bam. You win. Correct. The question of existence of a partnership should be determined chiefly from the terms of the writing. We have two writings, essentially. First- You say that, but that's not the law. Okay, and then I will also address the testimony and the conduct. The partnerships can be established without any writing? Correct. Without any formal agreement? Correct. Just from course of conduct? None of that happened here. Can I point out the key points here? Sure. The first writing of the loan agreement clearly is language of a loan. The words loan, lender, or interest are explicitly written 16 times in the document. Where are you? I'm on, it's the trial exhibit number one, and it's the loan document. Oh, and what page of the record? The ER? The ER page? Oh, I don't know. You came here to argue, not knowing where in the record? The very first exhibit. Is it the loan agreement? Yes, the loan agreement itself and the note. You don't have excerpts of record? I have the wrong. I was trying to follow. I seem to have the wrong record. Well, maybe opposing counsel can lend you his. Okay. And find the document and toss. My guess is you're looking at 103 of the record. If I'm wrong, I'm not wrong. Loan agreement? Well, do you want to show me where you were on the loan agreement? Just look at the numbers at the bottom. Pardon? Look at the numbers at the bottom. It's simple arithmetic. Look at the numbers at the bottom. It says page blank of blank, right? And you go to page 103. This is what. This is what. Okay. You can say 103. It looks to me like you haven't looked at this document. So page 103 and page 104 refer to the loan agreement as the title. Paragraph 1 says the loan shall be. The interest rate shall be. The loan may be paid off. The loan may be secured. CWTP will name lender as lost payee. Paragraph 5 says $50,000 of this initial $100,000 loan. Those are all characteristics of a loan. Well, now you're also referring to page 104, which is a note which was never signed. Is that correct? No, it was signed. Well, now you disagree with your counsel? With the opposing counsel? I believe there was evidence that it was signed. You know, I believe there was evidence. It's quite different from saying it was signed. You know, this is one of those things like a piece of paper. It either has a signature on it or not. Is there a piece of paper in this record that looks like the one on page 104, but has signatures on it? I believe so. Well, your belief is really sort of worthless. Can you point out where it is? I cannot. Okay. What do you make? I mean, you didn't go back far enough. What do you make of page 101, which is the email that? Yes. And so it basically says, here's the loan agreement. And the loan agreement clearly talks about how it's used. It says, and private offering. Yes. Correct. And the private offering reflects the terms of an operating agreement that would have been entered into at some point in the future when we entered into that. But that did not happen. No, that's your explanation. But remember, what we're doing is looking to see whether there's evidence supporting what the trial court did. Right. The fact that you have a different explanation for it doesn't really matter. The question is, why isn't this evidence supporting the finding of the bankruptcy court? The fact that this says, attached to the cover letter, loan agreement, note, and the private offering. Well, I believe there's sufficient case law that there was never any intent whatsoever to create a partnership, only an intent to provide a membership interest in this LLC. And formation of an LLC requires execution of a written agreement. The existence of the LLC begins upon filing of the Articles of Organization, which never happened. Counsel, you mentioned operating agreement in regard to that private offering. Is that the same operating agreement? Again, this is your interpretation. That appears in Section 5 of the loan agreement, which is on page 103? Yes. All right. The formal operating agreement on the second line of Section 5? Yes. In other words, that's your view, that the private offering referred to in the transmittal is the same as the formal operating agreement? Oh, no, no, no. An operating agreement is a formal operating agreement of a limited liability company. No such document was created or entered into. Well, nobody claims there was, but you can create a partnership without having an LLC. You can create a partnership without a written agreement. You can... Right. But you can't without intent. Well, that's right. So that's what we're looking for. We're looking for... I mean, the bankruptcy court found there was intent and the creation of a partnership. And your burden, if you want to tell us, persuade us that the court was wrong, is to say there's no evidence supporting that. The fact that you have evidence going the other way really is of no consequence. Because you've had a trial judge look at it, and the trial judge came out the other way. Can we really look at this record and say there's no evidence of an intent to create a partnership? Yeah, there was evidence of the intent to create a partnership in the future. That's the crux of the issue, and that never happened. And at all times, Kroll maintained all the benefits of a lender. He had loan modification. He had interest payments. He had no discretion. What about that statement we looked at earlier, where your lawyer says they were expecting to get an equity interest? Yes. That's another statement about the future, about their intent to enter into an agreement to be a partner in this project. In the meantime, they had all the benefits as a lender. They had a note that was secured by a deed of trust, that they received interest payments. They never acted as a partnership. They had no participation in management. They had no sharing of profits. They bore no risks of management. Why do they have to bear risks of management? It's one of the other pieces of evidence that would indicate that they were in a partnership. If you're a limited partner, your only risks, you don't get to manage. You don't get any liability beyond your interest rate. You're a limited partner. Why isn't that exactly what's going on here? Well, the bankruptcy appellate panel mentioned that as part of their reasoning, because case law makes clear that the raw general definition of a fiduciary involving confidence is inapplicable in the context of a 523A4. They did not participate in any management. They were not partners. They always maintained the rights and benefits. But you understand they don't have to participate in management in order to be partners, right? I get that. There are general partners, there are limited partners, and there's no requirement that they participate in the management. Correct. To be partners. They can't be partners and not participate. I get it. Now, in the testimony at trial, Kral acknowledged he funded a loan. Olson stated interest payments were received. Olson's brief states they received interest payments. That's all testimony of a lender. Kwan's trial testimony under direct examination by Olson was, you understand that part of Kral's money would be a profit participation. His answer was yes. My trial testimony under direct examination by Olson was, you understood that part of the Kral's money was going to be a profit participation. Yes. Under trial testimony under cross-examination, I was asked, have you ever disputed that Kral's would be entitled to an equity investment? I answered no. Those are all issues of a future interest. The bankruptcy appellate panel discussed in great detail that the court should remand so that the bankruptcy, the issue requires an intentional loan. Seems a little strange that after the property was sold for $3.7 million, everybody got paid except the Kral's. Everybody didn't get paid except the Kral's. It lost $400,000. That was what the accounting showed and demonstrated. And who lost the money? Other investors. They lost all of their investment? Yes. Some lost all and some lost most of it. The bankruptcy appellate panel discussed in great detail that the agreement to recharacterize the debt as a profit-sharing equity was conditional upon events that did not occur and that when the parties purport to establish a partnership to engage in a business at a future time around the happening of a contingency, the partnership does not become into being until a time specific. I'm sorry, what are you reading from? I'm reading from the bankruptcy appellate opinion on page 16, line 11, and page 17, line 3. We can read the opinion. But as I said, that opinion at this point is solely relevant. Okay. But anyway, you're out of time. Thank you. Okay. Did you want to take a minute for rebuttal? Only if your honors have any questions of me. Otherwise, I'm prepared to submit the matter. I believe there will be no questions. No questions. We are case order submitted. We're adjourned.
judges: Kozinski, Noonan, O'Scannlain